Good morning, Your Honors. Charles Fleischman for the Plaintiff and Appellant. This matter, as you probably know already, deals with a release in one case and whether it applies to an ERISA long-term disability plan. It's my belief that the release is ambiguous. Parole evidence should have been admitted to show what the true meaning of the release was, and the true meaning was that it didn't apply to the LTD plan at all, and none of the parties at the time they signed the release even thought about the long-term disability plan. That's basically the case. If there's any questions, I'd be glad to see if I can answer them. Well, one of the difficulties is the reference to ERISA specifically in the release. How do you deal with that? Well, it releases the employer from any ERISA claims. The employer, as the plan administrator, is a potential defendant for the ERISA claims, for the long-term disability claim, but it would never have to have paid the benefits since it's fully insured. So it makes sense that they would have that in the agreement so that the employer would not be named in a later lawsuit for ERISA LTD benefits. Also, as the administrator, it has potential liability for a failure to produce the claim file if it's requested. The ERISA regulations provide for a 110-day penalty to be assessed against the administrator only for every day there's a delay in sending out records that are requested by the beneficiary. So there is a potential for a lawsuit against the employer in its role as the administrator, and that's why the release would mention ERISA claims. I suppose the problem would be that it releases the company and all persons acting under, by, through, or in concert with them. That's a bit ambiguous. It's pretty broad, and it would cover customers. Potentially it could cover the post office, as I point out in my brief. It could cover a lot of different people that act in concert with the employer. You're saying it's so broad it's inherently ambiguous? Yes. Well, perhaps, although a plan administrator would certainly fall within probably most people's idea of what that meant. Right. The plan administrator is the employer, and there's no question that it releases the employer. The question is, does it release the plan, which is a separate entity from the employer, and does it release Unum, the insurer of the plan? And just the surrounding evidence shows that there was no intent for that to be released to apply to Unum or the plan itself. Unum was never even notified about the dismissal. Unum proceeded for three months to prosecute the administrative appeal and finished it with a denial of the appeal, but telling the plaintiff that she could bring a lawsuit in the district court, as she did. So Unum never even knew about it. And if it was intended to protect Unum and the plan, certainly somebody would have told Unum at the time or shortly after the time that the agreement was settled or signed. Certainly somebody would have, if they thought it was going to involve the plan, somebody would have notified me, because the employer, as the plan administrator owes a fiduciary duty to the beneficiary. They knew about my existence. They knew I was the attorney representing her on the long-term disability claim, but nobody, neither Mr. Hicks, the attorney for the plan, nor the employer, nor the employer, nor anybody notified me of this release agreement. I think we have your argument in hand. I want you to save some time for rebuttal. Thank you. Good morning, Your Honors. Leslie Green on behalf of Defendant, the CCC Information Services Benefit Plan. Your Honors, I think it's clear that two things, that Judge Civelli correctly applied the parole evidence rule, as the California Supreme Court has said. It's a two-step process. The first step in that process is you look at the evidence that's submitted without admitting it, simply review it to see if it shows that there's another meaning to the terms of the release to which those terms are reasonably susceptible. And he looked at that and said, no, there is no latent ambiguity here. And that is the correct process. And then he went the second step and said, okay, looking at the terms of the release, does it apply to this party? And he was correct as well that, no, he does the evidence not submit any of the declarations and does not provide any evidence of other terms or other meanings to which this release could be interpreted, but it was not admissible evidence at all, because contrary to the arguments that have been made and the broader language that has been said in argument and briefs, there was no evidence of the mutual intent of the parties. The only evidence that was submitted was the secret, undisclosed purported intent of one party, of one side. And the cases are clear that that is not admissible evidence to give meaning to a contract because you can't the – because the parties are unhappy with the result, they cannot later come in and say, well, I had this other thing in mind, but I didn't tell anybody at the time. And there are several cases in the Winnett case, which is cited at SCR page 120 on its footnotes, that says, no, no, no, you can't – this is not admissible evidence. The secret, undisclosed intent is not admissible in any event. So then Judge Shavilla correctly went to the terms of the release. And the terms say, under the release language as to who the releasees are, it says we're going to release any person. First of all, we know an ERISA plan is a person. It's defined as a person in 1132a1b, where it says a plan can sue or be sued. So the plan is potentially within there. It is a person. And then it says, in person acting by, under, or in concert with the employer. Certainly, a plan is acting by an employer. The employer establishes it. It funded it. It set it up. It maintained it. It acted as plan administrator. And certainly, the plan acted in concert with the employer because the plan was the vehicle that the employer chose to provide benefits to its employees. What is the interest of the employer in securing the release? The interest in the employer is, as it's – Securing the release of the plan. Sure. As it states in the release, what was intended by, we presume, the parties, because it says this, that this was intended to be a complete release of everything to do with her employment relationship. And that, I believe, Your Honors, is why one of the reasons why it includes insurance benefits, ERISA benefits, ADA, all sorts of others, you know, Federal and State statutes, it was very clear that the employer wanted to be sure that any potential claims having to do with anything to do with the employment relationship was something that was being released here. And counsel has argued both ways in his briefs. Could it effort the employer to release the plan? Potentially, it could under the Gaines case. It says that, as we said in the brief, we don't necessarily agree that that is the way that the law should go or the way the current, the correct statement of the law. But certainly, the Gaines case is a published opinion, and it says that the plan administrator can be brought in in a case for benefits, in a lawsuit for benefits. Well, sure. But the release, there might be a claim of a breach of fiduciary duty or something like that. But at the end, the plan didn't get any consideration for this release. And although Gaines is out there, there was really no incentive for the employer to seek a release of the plan benefits, benefits from a separate entity funded by an insurer. Go ahead. Well, there may well be to the extent that claims under the insured plan has to do with premiums. Remember, this is a fully funded plan, fully contributory. The employer was paying all the premiums for its employees. And therefore, to the extent that claims, it's a claim-based premium, then the employer would have an incentive to make sure that there are any claims out there that are going to be litigated, that are going to be brought up. They wanted to be sure, he or it, the employer, wanted to be sure that everything was off the table with respect to the record. Does the record indicate that premiums are experience-based? No, it doesn't, Your Honor. But you were asking hypothetically, what could, why would the employer be thinking this? And all we know about what the employer was thinking was, is what's in the release. And we believe, Your Honor, that the release is very clear that both under the releasees, it wanted to be completely broad, everyone affiliated, et cetera, et cetera, et cetera. And you may ask me, well, with respect to a particular affiliate, how does the employer care if they're brought in? Well, again, we don't know what was in the employer's mind except what's in the release, and that is, they wanted this to be broad. And they wanted all entities which had any relationship to the employer to be released. And one of those entities is the ERISA plan by the terms of the release. And to slip up, not to notify the plan and the insurance company that everything had been released. I don't know that it was a slip up. I think that, I don't think that at all. I think that whether or not a release is effective does not depend on the reliance or knowledge of third parties. So whether or not Unum knew about this release, and in fact, the reason that Unum found out was because after the release and after she sued Unum, the employer's lawyer called Unum and said, there's this release out there. She's released these claims. Prior to that, prior to the employee suing, prior to Ms. Austin suing Unum, the employer had no knowledge that there was any reason for Unum to know. And when there was this litigation, that's when the employer's lawyer contacted Unum and said, these claims have been released. Roberts. Anything further? Okay. Thank you. Thank you. The employer knew about the LTD claim, or the employer's lawyer, Mr. Hicks, knew about the disability claim from depositions that he took in the Superior Court case. So they knew about the claim. They never bothered. The fact that they never bothered to tell Unum about the claim, about the release, is strong evidence that they never thought that the release applied to the LTD claim. And strong evidence that they really didn't feel they had no stake in the claim. So they didn't bother to tell anybody. They didn't even think it applied. But they did know about the claim. As far as we don't know the intent of the employer, we know from their actions, their failure to notify Unum of the release. If they thought it was important, they would have told Unum if they thought it applied to Unum. But the fact that they never did is an inkling or is evidence of their intent to not have that release apply to the LTD claim, but only apply to the employer. Further, if the defendant thought that the intent was any different on the part of the employer, the defendant, who after all they're claiming is the agent, one is the agent of the other, they could have gone to their agent, Unum, and said or Unum could have gone to their principal, the employer, and said, well, we need some declarations about the intent. How about Mr. Hicks giving a declaration? But that never happened because either Mr. Hicks didn't have the intent that Unum hoped Unum had or for whatever reason, unless there are any questions submitted. Thank you, counsel. The case is here to be submitted. The case of De La Rosa v. Barnhart is submitted on the briefs.
judges: Canby, Thomas, Conlon